**Roger Leroy DEGARMO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–94–00153–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 18, 1996.

Greg Gladden, Houston, for appellant.

J. Sidney Crowley, Houston, John Harrity, Richmond, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

## OPINION

YATES, Justice.

Appellant entered a plea of not guilty to the offense of capital murder. TEX.PENAL CODE ANN. § 19.03 (Vernon 1989).[1] A jury found him guilty and assessed punishment at life imprisonment. In ten points of error, appellant alleges error in the trial court's rulings on his pretrial motions, error in the voir dire of the jury panel, and error in the jury charge. We affirm.

On January 8, 1979, appellant and Helen Mejia kidnaped Kimberly Ann Strickler and put her in the trunk of her own car. After driving to a location in Fort Bend County, the automobile became stuck in the mud. As John Moers drove toward the stuck automobile, appellant flagged him down and asked Moers to help extricate Strickler's car from the mud. After Moers exited his truck, Mejia held Moers captive by pointing a pistol at him. With Mejia driving Strickler's car, and Strickler still alive, but inside the locked trunk, and appellant driving Moers's truck with Moers held hostage inside of the truck, appellant and Mejia drove to a new location. Upon arrival at the new location, appellant opened the trunk of Strickler's car and shot her in the head, causing her death.

Thereafter, Mejia drove Strickler's vehicle to another location, where she abandoned the vehicle with Strickler's body in the trunk. With appellant now driving Moers's pickup truck, Moers sitting next to the passenger door and Mejia in the middle, the trio drove towards Houston. While they were driving, they passed some police officers gathered outside of a convenience store. At that time, appellant said to Moers, "Do you see them cops or officers right there? If one of them gets after us, you're dead." Moers eventually escaped by jumping from the moving truck.

In 1980, appellant was convicted of capital murder and sentenced to death. In August, 1992, appellant's sentence was reversed and remanded for a new trial. Appellant was retried in 1994, found guilty of capital murder, and sentenced to life in prison. From that judgment, appellant now appeals.

■ In his first point of error, appellant asserts the trial court erred in quashing subpoenas for certain news reporters based on a non-existent "newsman's privilege." Both the State and appellant filed applications for subpoenas duces tecum directed to the record custodians of television stations KHOU, KPRC, KRIV, and KTRK requiring their appearance before the court and requiring them to produce videotapes they had concerning appellant's case. The television stations filed motions to quash the subpoenas. The court granted KTRK's motion as to certain out-take material and KRIV's motion as to its reporter Randy Wallace on the basis of a qualified newsman's privilege.

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. See Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

■ The State concedes the trial court erred in granting the motions to quash. Newsmen have no constitutional privilege, qualified or otherwise, to withhold evidence relevant to a pending criminal prosecution. *State ex rel. Healey v. McMeans,* 884 S.W.2d 772, 775 (Tex.Crim.App.1994). The State contends, however, that appellant did not preserve error because he did not make an offer of proof of what the excluded evidence would show. Absent a showing of what such testimony would have been, or an offer of a statement concerning what the excluded evidence would show, nothing is presented for review. *Stewart v. State,* 686 S.W.2d 118, 122 (Tex.Crim.App.1984), *cert. denied,* 507 U.S. 1053, 113 S.Ct. 1951, 123 L.Ed.2d 656 (1993). Although appellant did not make an offer of proof regarding what the excluded testimony would show, he stated that he anticipated the State would introduce incriminating material from the television broadcasts. Appellant told the trial judge he needed the reporter's testimony and the out-takes from the videotapes to show the jury the unedited versions of what he anticipated the State would introduce. At trial, however, the State did not introduce any of the videotaped interviews into evidence. Because the State did not offer the broadcast tapes into evidence, appellant's need for the reporter's testimony and the out-takes became moot, and the exclusion could not have contributed to his conviction. Appellant's first point of error is overruled.

■ In his second point of error, appellant claims the trial court abused its discretion in denying his motion for change of venue from Harris County. The trial court transferred appellant's case from Fort Bend County to Harris County upon appellant's motion to change venue. Appellant then filed a second motion to change venue challenging venue in Harris County. Appellant maintains he faced unfair pretrial publicity in Harris County due to its proximity to Fort Bend County where the offense occurred and where his original trial was held.

■ A trial court may grant a change of venue upon written motion of the defendant, supported by his own affidavit, and the affidavit of at least two credible residents of the county where the prosecution is instituted, if a great prejudice exists against him in the county such that he cannot obtain a fair and impartial trial, or influential persons instigate a dangerous combination against him by reason of which he cannot expect a fair trial. TEX.CODE CRIM.PROC.ANN. art. 31.03(a) (Vernon 1989). The defendant bears a heavy burden to prove the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. *DeBlanc v. State,* 799 S.W.2d 701, 704 (Tex.Crim.App.), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1990). For the defendant to prevail in his motion to change venue, he must demonstrate that publicity about the case is pervasive, prejudicial and inflammatory. *Id.* In other words, a defendant must demonstrate an actual, identifiable prejudice attributable to pretrial publicity on the part of the community from which members of the jury will come. *Id.* An automatic showing of prejudice such that the defendant is entitled to a venue change does not arise merely because the case received publicity in the media. *Id.* Jurors do not have to be totally ignorant of the facts and issues of a particular case. *Id.*

The trial court conducted a hearing on the defendant's second motion to change venue. Witnesses for appellant testified they were of the opinion that appellant could not get a fair trial in Harris County because of the media coverage and because of what they had heard expressed from their friends and families in Harris County about their preconceived notions of appellant's guilt. Appellant also produced several videotapes of television coverage of the case. When questioned about the television coverage, several witnesses testified that appellant received no more coverage than other death row inmates featured in the news stories.

In rebuttal, the State called witnesses from Harris County who expressed the opinion that appellant could obtain a fair and impartial trial in Harris County. The State called an assistant district attorney who testified that, because Harris County is large and has so many high profile cases, the public is bombarded with information and tends to retain very little of it. Thereafter, the trial

judge overruled appellant's motion for change of venue.

A trial court's determination of venue may be reversed only for an abuse of discretion. *Hathorn v. State,* 848 S.W.2d 101, 109 (Tex.Crim.App.), *cert. denied,* 509 U.S. 932, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1992). The trial court has the task of acting as fact-finder on the venue question. *Id.* Its decision will not be disturbed so long as it is within the realm of reasonableness given the record before it. *Narvaiz v. State,* 840 S.W.2d 415, 428 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Having reviewed the testimony and exhibits presented at the hearing on the motion to change venue, we conclude the trial court did not abuse its discretion in overruling appellant's motion. Appellant's second point of error is overruled.

In his third point of error, appellant claims the trial court erred in denying his motion for a special venire, and overruling his challenge to the array. Appellant alleges the court's clerical staff illegally excused potential veniremembers without the judge's involvement, thus summoning the jury venire unlawfully and with a view toward securing a conviction. Reasons for rescheduling jurors were ruled on by the central jury room judge in the Jury Assembly Room of Harris County. Some of the veniremembers had been rescheduled by the district clerk personnel without the summoned person having to make an appearance. Appellant objected to this procedure, and moved for a special venire. Appellant, relying on article 35.03 of the Texas Code of Criminal Procedure, contends that the trial court is required to personally rule on excuses and disqualifications of prospective jurors.

Article 35.03, subsection 1, provides in part that "the court shall then hear and determine excuses offered for not serving as a juror" and may discharge jurors or postpone their service accordingly. Subsection 2 provides that under a plan approved by the commissioner's court of the county, "in a case other than a capital felony case, the court's designee may hear and determine an excuse" and postpone a juror's service. Appellant

claims that in a capital case, the trial judge is the only person who may rule on excuses and disqualifications.

Here, the trial judge had the opportunity to hear and rule on excuses and qualifications of those veniremembers who were assigned to appellant's case from the central jury room and who appeared before him in appellant's case. Nothing in the plain language of the provisions cited by appellant requires the trial judge to make rulings with respect to veniremembers summoned to the central jury room that have not yet been assigned to the case. *Chambers v. State,* 903 S.W.2d 21, 30 (Tex.Crim.App.1995). In *Chambers,* the court stated:

> The language in subsection (2) of *article 35.03,* providing that the court's designee may make decisions on excuses in cases *other than* capital felony cases is troubling. However, when viewed in the context of the jury formation process, we again cannot conclude that this language would prohibit the general assembly judge from designating personnel to make such decisions. This is because at the time the summoned jurors apply for excuses, they have not been assigned to any particular case. There is no way of knowing what kind of case the prospective jurors would subsequently be assigned to, capital or noncapital. (emphasis in original)

*Id.*

Here, as in *Chambers,* the potential jurors who were granted excuses by court designees were general assembly veniremembers and were not assigned to appellant's or any other particular case. Appellant has failed to show that the jury selection procedures failed to comply with article 35.21. Appellant's third point of error is overruled.

In his fourth point of error, appellant claims the trial court erred in denying his challenges for cause to three prospective jurors. Appellant claims that in denying his challenges for cause and denying his request for additional peremptory strikes, the trial court forced him to accept an objectionable juror. When the trial court erroneously overrules a challenge against a veniremember, the defendant is harmed only if he

uses a peremptory strike to remove the veniremember and thereafter suffers a detriment from the loss of a strike. *Chambers v. State*, 866 S.W.2d 9, 22 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). The defendant preserves error for review only if he uses all his peremptory strikes, asks for and is refused additional peremptory strikes, and is then forced to take an identified objectionable juror whom he would not otherwise have accepted had the trial court granted his challenge for cause or granted him additional strikes. *Adanandus v. State*, 866 S.W.2d 210, 220 (Tex.Crim.App.1993).

Appellant requested an additional eight peremptory strikes. The trial court granted five additional strikes. Appellant used the five additional strikes to strike jurors previously challenged for cause, and asked for an additional strike to remove an unacceptable juror. On appeal, appellant complains the trial court wrongly denied only three of his challenges for cause. Consequently, appellant has failed to show the trial court forced him to exhaust all his peremptory strikes against persons previously challenged for cause. Appellant has failed to preserve error for review. *See Harris v. State*, 790 S.W.2d 568, 581 (Tex.Crim.App.1989). Appellant's fourth point of error is overruled.

▇ In his fifth point of error, appellant claims the trial court erred in granting a motion to quash a subpoena duces tecum for records of the complainant's stay in the Methodist Home in Waco, Texas. Dr. Jack Daniels, president of the Methodist Home, testified that the Methodist Home is a nonprofit child care facility licensed by the State of Texas. Kimberly Strickler was sent to the Methodist Home by a juvenile court in Harris County. Strickler lived at the home for one year. Appellant filed a subpoena duces tecum seeking the records from Strickler's one-year stay.

The Texas Family Code provides in pertinent part:

All files and records of a public or private agency or institution providing supervision of a child by arrangement of the juvenile court or having custody of the child under order of the juvenile court are open to inspection only by:

(1) the professional staff or consultants of the agency or institution;

(2) the judge, probation officers, and professional staff or consultants of the juvenile court;

(3) an attorney for the child;

(4) with leave of the juvenile court, any other person, agency, or institution having a legitimate interest in the work of the agency or institution; or

(5) the Texas Department of Corrections, the Department of Public Safety, and the Texas Juvenile Probation Commission, for the purpose of maintaining statistical records of recidivism, and for diagnosis and classification.

TEX.FAM.CODE ANN. § 51.14(b) (Vernon Supp. 1994) *repealed by* Acts 1995, 74th Leg., ch. 262, § 100(a), eff. Jan. 1, 1996.[2]

▇ Although appellant did not meet any of the statutory exceptions permitting him to view Strickler's juvenile records, appellant argues the trial judge could have admitted the records under seal for appellate review by conducting a balancing test enunciated in the following cases: *Hall v. State*, 745 S.W.2d 579 (Tex.App.—Fort Worth 1988, pet. ref'd); *Coachman v. State*, 692 S.W.2d 940 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd); *Brooks v. State*, 690 S.W.2d 61 (Tex. App.—Houston [14th Dist.] 1985, no pet.). None of those cases enunciates a balancing test for the admission of juvenile records. Those cases state the general rule that juvenile records may be admissible in some circumstances to impeach a witness by showing bias, motive, or prejudice; *see Brooks*, 690 S.W.2d at 63 and *Hall*, 745 S.W.2d at 583; or upon a showing of necessity. *See Coachman*, 692 S.W.2d at 945.

Appellant failed to address the relevancy or the necessity of inspecting Strickler's juvenile records; therefore, the trial judge properly quashed the subpoena duces tecum. Appellant's fifth point of error is overruled.

**2.** Because § 51.14(b) was in effect at the time the trial judge made his ruling, we will follow the code section in effect at the time the ruling was made.

In his sixth point of error, appellant claims the trial judge erred in denying his motion to dismiss for lack of a speedy trial. The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution as applied through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The same right is assured by article I, section 10 of the Texas Constitution and article 1.05 of the Texas Code of Criminal Procedure.

In determining whether an accused was denied the right to a speedy trial, we must employ a balancing test as set out by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors to be considered are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. *Id.*

### Length of the Delay

The length of delay is measured from the time the defendant is formally accused or arrested until the time of trial. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). No specific length of delay automatically constitutes a violation of the right to a speedy trial. *Hull v. State,* 699 S.W.2d 220, 221 (Tex.Crim.App. 1985). In this case, appellant was originally indicted in 1979. Appellant's second trial began on November 15, 1993, resulting in a delay of approximately fourteen years. Such a delay is more than sufficient to require a further examination of appellant's speedy trial claim.

### Reason for the Delay

In considering the reason for the delay, we must look at whether the delay was due to deliberate attempts to hamper the defense, justified circumstances such as missing witnesses, or more neutral reasons such as overcrowded court dockets. *Crowder v. State,* 812 S.W.2d 63, 66 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). Deliberate delays weigh heavily against the State. *Id.*

To address the reason for the delay in this case, we must review its long procedural history. In 1979, appellant was indicted for the murder of Kimberly Strickler. He was tried and convicted of capital murder on March 27, 1980. On April 1, 1980, he was sentenced to death. The Court of Criminal Appeals affirmed the conviction and sentence on March 13, 1985. *DeGarmo v. State,* 691 S.W.2d 657 (Tex.Crim.App.), *cert. denied,* 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985). Appellant then filed an application for writ of habeas corpus, which was denied without a hearing by the Court of Criminal Appeals on March 11, 1986.

Appellant then filed his first petition for writ of habeas corpus in federal court. The federal court determined that appellant had failed to exhaust state remedies on a newly discovered evidence claim and dismissed the petition on April 8, 1987. United States District Judge James DeAnda granted a stay of the scheduled March 12, 1986 execution. On February 12, 1988, the state court judge issued his findings of fact and a recommendation that appellant's habeas application be denied. On September 18, 1991, the Court of Criminal Appeals denied appellant's writ.

On February 10, 1992, appellant filed his second federal petition for writ of habeas corpus. The State entered into an agreement with appellant and the court that it would not appeal the federal court's ruling if the court granted the writ. The State agreed not to appeal "so that a new trial could be had at the earliest possible moment in Fort Bend County." On August 6, 1992, Judge DeAnda granted appellant's federal petition for writ of habeas corpus. Judge DeAnda ordered that appellant remain in custody so the State could retry him, and ordered the State to commence new trial proceedings against appellant within 120 days.

On August 10, 1992, Judge Culver of the 240th District Court of Fort Bend County, was served with a copy of Judge DeAnda's order and appellant's counsel was reaffirmed as appointed counsel. On September 8, 1992, the Assistant Attorney General in charge of the case filed a notice of appeal of Judge DeAnda's order in direct contravention of the

stipulation previously signed. On November 20, 1992, the State filed its motion to stay the judgment of the order issued by Judge De-Anda. The Assistant Attorney General claimed he contacted the court on December 3, 1992 to inquire about the motion's status. He further claimed he was told that Judge Norman Black was temporarily handling matters in the case, that the motion to stay had been granted, and that an order had been signed. The motion, in fact, was never acted upon. The Assistant Attorney General then advised the Fort Bend County District Attorney's office that the stay had been granted. When the Assistant Attorney General later contacted the federal district clerk's office to verify that the stay had been granted, he was told that it had not been granted. The 120–day period in which the State was to commence new trial proceedings expired on December 7, 1992.

On February 8, 1993, the Fifth Circuit dismissed the State's appeal of Judge DeAnda's order and remanded the case to the federal district court for enforcement of the writ of habeas corpus. Shortly thereafter, the Attorney General's office notified Fort Bend County of the Fifth Circuit's disposition.

During the pendency of the appeal in federal court, Fort Bend County began initial preparation for trial in the event the appeal was dismissed or the order was affirmed. In response to a motion filed by Fort Bend County, appellant asserted that Fort Bend County was without jurisdiction to litigate the matter in that the case was still pending final resolution in the federal system. At that time, it appears there was genuine confusion as to which court had jurisdiction over appellant's case.

On March 6, 1993, appellant asserted his right to speedy trial for the first time by filing, in federal court, a motion for release from custody and to bar further prosecution. On May 6, 1993, the federal district court conducted a status conference to determine whether Fort Bend County intended to retry appellant and, if so, what steps had been taken to that end. Fort Bend County indicated that it intended to retry appellant and that it was in the process of preparing for trial. On June 2, 1993, appellant was re-indicted in the 240th District Court of Fort Bend County. On June 11, 1993, the federal court denied appellant's motion for release from custody and to bar further prosecution. In that order, Judge John Rainey noted that appellant's counsel was in trial in Judge Melinda Harmon's court regarding another matter. Judge Rainey ordered appellant's trial to proceed within thirty days of the conclusion of the trial pending in Judge Harmon's court. A trial date was later set for October 18, 1993. Appellant's counsel then filed a second motion for continuance on November 5, 1993. The court overruled the motion and on November 15, 1993, appellant's second trial began.

Appellant was initially indicted in 1979 and was afforded a speedy trial on that indictment. Appellant was convicted, the conviction was affirmed, and that conviction remained valid throughout the time appellant challenged his conviction in the state courts. Appellant was not entitled to a new trial until August 6, 1992. The delay between appellant's original indictment in 1979 and his successful petition for habeas relief on August 6, 1992, is not attributable to the State, but to appellant's efforts in seeking appellate and habeas relief.

In his arguments to this court regarding the alleged denial of a speedy trial, appellant speaks almost exclusively to the events that occurred after Judge DeAnda's conditional grant of relief on August 6, 1992. We will now address the reason for the delay between that date and November 15, 1993, the date the trial commenced. Although the State began preparing for trial after Judge DeAnda's order was issued, the State was dilatory in failing to comply with Judge De-Anda's order to retry appellant within 120 days. The State, in its brief to this court, states, "it was entirely reasonable that the State await the outcome of the appeal of [Judge DeAnda's] decision from the Fifth Circuit." Although in other instances we would agree with this statement, because the appeal was taken in contravention of an agreement with appellant and the court, we consider the delay between December 7, 1992 and March 6, 1993 to be deliberate. The

delay between March 6, 1993 and November 5, 1993, however, is attributable to appellant. As Judge Rainey's order reflects, appellant's counsel was in trial in Judge Harmon's court and was granted a continuance until after that case concluded.

### Appellant's Assertion of his Right

■ A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Crowder*, 812 S.W.2d at 67. Failure to assert that right, however, will make it difficult to prove that he was denied a speedy trial. *Id.*

Appellant first asserted his right to speedy trial in state court in a motion to dismiss filed on June 14, 1993. As we have stated earlier, prior to Judge DeAnda's order, appellant had no reason to assert his speedy trial right because he was under a death sentence from a valid conviction. The trial court denied appellant's motion to dismiss, and trial commenced on November 15, 1993. Although a motion to dismiss can notify the State and the court of a speedy trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim. *Phillips v. State*, 650 S.W.2d 396, 401 (Tex.Crim.App.1983). Based on our review of the record, we conclude appellant's prime objective was not to gain a speedy trial, but to have the charge against him dismissed.

### Prejudice to the Appellant

■ In *Barker*, the Supreme Court identified three purposes behind the right to a speedy trial: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193. Proof of actual prejudice is not required. The defendant must only make some showing that the delay has been prejudicial. *Phillips*, 650 S.W.2d at 401.

Appellant argues that the excessive delay has impaired his defense because fact witnesses and alibi witnesses were unavailable for his defense at the time of trial. Appellant failed, however, to name those witnesses or to set out the subject of their testimony.[3] Appellant has made no showing of prejudice from the absence of those witnesses. Further, any prejudice resulting from the unavailability of the witnesses can be partially attributed to appellant's efforts in seeking appellate and habeas relief and in seeking a continuance on the second trial.

We must now engage in a balancing process in which none of the four factors alone is either necessary or sufficient to a finding of deprivation of the right to a speedy trial. *Crowder*, 812 S.W.2d at 68. In this case, after a federal judge ordered appellant retried within 120 days, there was a fifteen month delay in bringing appellant to trial. The delay is attributable to both the State and appellant. Further, rather than actively asserting his right to a speedy trial, appellant sought dismissal of the charges against him. Finally, appellant has failed to make some showing of prejudice resulting from the delay. Under the circumstances of this case, we hold the trial court did not err in denying appellant's motion to dismiss because appellant was not denied his right to a speedy trial. Appellant's sixth point of error is overruled.

■ In his seventh point of error, appellant claims the trial court erred in denying his objections to the language used in the court's charge at the punishment phase of his trial. Appellant received a life sentence from the jury, the minimum punishment allowed under article 37.071 of the Code of Criminal Procedure. As a result, we need not consider any points of error relating to the punishment stage because error, if any, will always be harmless. *Graham v. State*, 643 S.W.2d 920, 925 (Tex.Crim.App.1983). Appellant's seventh point of error is overruled.

■ In his eighth point of error, appellant claims the trial court erred in denying his motion to recuse Judge Brady Elliott

---

3. In a post-submission brief, appellant attempts to name certain missing witnesses. However, we must review the evidence before the trial judge at the time he made his ruling. *See State v. Perkins*, 911 S.W.2d 548, 551 (Tex.App.—Fort Worth 1995, no pet. h.)

upon a showing that the case was illegally transferred to Judge Elliot's court and that Judge Elliot's unsuccessful election campaign for the 240th District Court was funded in part by the victim's parents. Appellant first claims Judge Culver "illegally transferred" the case to Judge Elliott. Judge Culver testified at the hearing on appellant's motion to recuse. In his testimony, he stated that he recused himself on the basis of a State's motion. Culver, pursuant to local rules, transferred the case to Judge Elliott. Appellant objected to that transfer, claiming Judge Culver had not followed the proper procedure. Upon appellant's objection, Culver referred the case to Judge Thomas Stovall, the presiding judge of the Second Administrative Region. Judge Stovall appointed Judge Elliott to hear the case.

Contrary to appellant's contention, Judge Culver followed the correct procedure. Rule 18a provides that if a judge recuses himself, "he shall enter an order of recusal and request the presiding judge of the administrative judicial district to assign another judge to sit[.]" Tex.R.Civ.P. 18a. Appellant seems to complain of Judge Culver's initial transfer of the case to Judge Elliott. The record reflects, however, that Judge Culver corrected that action after appellant objected to it. We find no merit in appellant's claim that the case was "illegally transferred."

After Judge Elliott's appointment, appellant filed a motion to recuse Judge Elliott. In his motion to recuse, appellant relied on Rule 18a of the Texas Rules of Civil Procedure, article 5, section 11 of the Texas Constitution and article 30.01 of the Code of Criminal Procedure. Article 5, section 11 and article 30.01 refer to disqualification of judges; Rule 18a refers to disqualification and recusal of judges.

 The grounds for disqualification are expressly set out in the Texas Constitution. If a judge is disqualified under the constitution, he is absolutely without jurisdiction in the case, and any judgment rendered by him is void and subject to collateral attack. *See Lee v. State,* 555 S.W.2d 121, 124 (Tex.Crim.App.1977). Disqualification of a judge in a criminal case can occur when: (1) the judge is the injured party; (2) the judge

has been counsel for the accused or the State; or (3) the judge is related to the defendant or complainant by affinity or consanguinity within the third degree. Tex. Code Crim.Proc.Ann. art. 30.01 (Vernon 1981). Because appellant neither alleged nor proved any of the three grounds for disqualification, we will only address appellant's complaint regarding recusal.

 Recusal includes those instances in which a judge voluntarily steps down and those instances in which a judge is required to step down on motion of a party for reasons other than those enumerated as disqualifying in the constitution. William W. Kilgarlin & Jennifer Bruch, *Disqualification and Recusal of Judges,* 17 St. Mary's L.J. 599 (1986). Appellant argues Judge Elliott should have been recused because he was biased against appellant. Appellant's allegations of bias center around Judge Elliott's unsuccessful campaign to be elected to the 240th District Court. When bias is alleged as a ground for disqualification or recusal, a trial judge ruling on the motion must decide whether the movant has provided facts sufficient to establish that a reasonable person, knowing all the circumstances involved, would harbor doubts about the impartiality of the trial judge. *Kemp v. State,* 846 S.W.2d 289, 305 (Tex. Crim.App.1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). The refusal of a defendant's motion for recusal is reviewable only for abuse of discretion. *See* Tex.R.Civ.P. 18a. An appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement. *Kemp,* 846 S.W.2d at 306.

Judge Elliott testified in a pretrial hearing before Judge Neil Caldwell that he accepted $500 as a campaign contribution from Kimberly Strickler's father. He further testified that he made no representations to the victim's family concerning any future action he might take on the case. He received no support from the victim's family in his subsequent campaign for election to the 268th District Court. Campaign contributions cannot serve as independent grounds for recusal. *River Road Neighborhood Association v. South Texas Sports, Inc.,* 673 S.W.2d 952, 953 (Tex.App.—San Antonio 1984, no writ).

*See also Manges v. Guerra,* 673 S.W.2d 180 (Tex.1984).[4] After reviewing the evidence presented at the pretrial hearing, we conclude Judge Caldwell did not abuse his discretion in denying appellant's motion. Appellant's eighth point of error is overruled.

In his ninth point of error, appellant claims the trial court erred in failing to declare article 37.071(g) of the Code of Criminal Procedure unconstitutional. Appellant claims that subsection (g) of article 37.071 violates the Eighth and Fourteenth Amendments to the United States Constitution because it does not fully inform the jury of the consequences of not reaching a verdict during the punishment phase of the trial. There is no constitutional inhibition to concealing from jurors the consequences of their deliberations, so long as they are not misled into believing that ultimate responsibility for the verdict rests elsewhere. *Arnold v. State,* 873 S.W.2d 27, 37–38 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 103, 130 L.Ed.2d 51 (1994); *Draughon v. State,* 831 S.W.2d 331, 337–8 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993). Further, the Court of Criminal Appeals has held that article 37.071(g) is constitutional and does not subject a defendant to cruel and unusual punishment. *Rousseau v. State,* 855 S.W.2d 666, 687 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). Appellant's ninth point of error is overruled.

In his tenth point of error, appellant claims the trial court erred in denying his pretrial motion to suppress identification. Appellant's entire argument under this point of error appears as follows:

> The procedures used to identify Defendant were impermissibly suggestive,
>> with a substantial likelihood of misidentification, thus depriving Defendant of his due process and equal protection rights secured by the Fourteenth Amendment to the United States Constitution and Article I, § 19 of the Texas Constitution.

Appellant's motion to suppress identification, filed with the trial court, is vague with regard to the identification procedures he finds objectionable. In reviewing the statement of facts of the pretrial hearings, we find testimony concerning post-hypnotic testimony of John Moers. When Moers described appellant and his codefendant, Helen Mejia, to the police artist, he was under hypnosis. Appellant claimed the hypnosis procedures were impermissibly suggestive and Moers's identification testimony should not be allowed. Moers, however, identified appellant at trial with no objection from appellant or his counsel. By failing to object to Moers's identification at trial, appellant waived any error with regard to the out-of-court identification procedures. *Perry v. State,* 703 S.W.2d 668, 671 (Tex.Crim.App.1986). Appellant's tenth point of error is overruled.

The judgment of the trial court is affirmed.

4. Although the *Manges* opinion does not mention the allegation on which recusal of three justices of the supreme court was sought, Justice Kilgar-lin avers it was on the basis of receipt of political contributions. *See* Kilgarlin & Bruch, *supra* at 638.