Affirmed and Opinion filed May 23, 2002









Affirmed and Opinion filed May 23, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-01-00556-CR

         
14-01-00557-CR

____________

 

MARCOS LOPEZ ORTIZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 56th District Court

Galveston County, Texas

Trial Court Cause Nos. 00CR1008 and 00CR1009

 



 

O P I N I O N








In a consolidated appeal, appellant Marcos Lopez Ortiz
challenges the deadly weapon findings in the trial court=s two judgments on jury verdicts
convicting him of aggravated robbery and aggravated assault.  Appellant asserts that these findings were
improper and that they violate the double-jeopardy clauses of the United States
Constitution and the Texas Constitution. 
Appellant also asserts improper and incurable jury argument by the
State, the erroneous admission of in-court identifications, improper statements
by the State during voir dire, ineffective assistance
of trial counsel by her failure to object to improper jury argument and to
inadmissible identifications of appellant, and an unconstitutional delay in
trying appellant. We affirm both of the trial court=s judgments.   

                              I. 
Factual and Procedural Background

At approximately 11:00 p.m. on June 2, 2000, Joseph Cassidy
and his wife, Arcadia Flores, returned to their apartment complex in Galveston
after a trip to a convenience store. Cassidy and Flores both testified that a man
approached them as they were getting out of their car, asked them for money,
and then, while brandishing a gun, demanded both their money and their car
keys. 

Cassidy told his wife to leave the area, and she went to a
neighbor=s apartment to call 9-1-1 while
Cassidy stayed and tried to get the gun away from the bandit.  During a 30B40 second struggle, the gunman hit
Cassidy=s face with the gun, causing Cassidy
profuse bleeding, bruising, and possibly a brief loss of consciousness.  The gunman eventually got Cassidy=s keys from him, got into the car,
and drove the car out of the parking lot.

Based on information received from Flores=s 9-1-1 call, the Galveston Police
Department broadcast over the radio a description and registration of the
stolen car and a description of the suspect. 
Just as Officer Eric Cox received these descriptions in his patrol car,
he observed a car at the intersection at which he was stopped that matched both
the registration and the description of the car that had just been reported
stolen.  Cox also noticed that the driver
of this car was a Hispanic male wearing a white shirt, just like the
description of the suspect that he had just received.  The driver apparently saw Cox looking at him,
so he ran the red light at the intersection and attempted to flee.








Cox pursued the car down several streets, through a parking
lot, and across a field. The man in the stolen car drove erratically, jumped
curbs, and almost collided head-on with another car.  Eventually, he came to a stop upon hitting an
embankment.  Cox trained his light on the
driver, left his patrol car, and ordered the driver to the ground. Cox made eye
contact with the driver of the stolen car and got Aa good look@ at him from about fifteen feet away.
 The driver did not comply; rather, he
fled on foot.  Cox followed but tripped
and lost sight of him. 

While Cox secured the stolen car, other police officers,
including Sergeant Jimmy Gillane of the Galveston
County Sheriff=s Department, set up a perimeter
around the area in an attempt to contain and apprehend the fleeing
suspect.  Gillane
noticed a motion-activated light turn on outside a nearby house.  Gillane saw a white
or Hispanic male who appeared to duck and run in response to the light coming
on.  Gillane
located this man, later identified as appellant, and kept him in custody until
Galveston police officers arrested him. 

The police found a cap and a gun in the stolen car that had
been abandoned.  An officer was driving
Cassidy and Flores to the police station, when he was told that a suspect had
been apprehended.  The officer then took
Cassidy and Flores to the place where appellant was apprehended.  Cassidy and Flores each separately identified
appellant as the man who had robbed and assaulted them.  Cassidy and Flores later identified appellant
again when he was in a holding cell.  On
both occasions there was no line-up, and they were simply asked whether
appellant was the perpetrator. 








A grand jury indicted appellant for aggravated assault and
aggravated robbery.  Each indictment also
alleged that appellant exhibited or used a deadly weapon when he committed the
offense.  Appellant pleaded not guilty to
both indictments.  At appellant=s trial for aggravated assault and
aggravated robbery, Cassidy and Flores both testified that they got a clear,
close-up view of the man who robbed and assaulted them.  Both Cassidy and Flores identified appellant
in the courtroom as the perpetrator. 
Officer Cox testified that he got Aa good look@ at the suspect before he started
pursuing him on foot, and Cox positively identified appellant in court as the
suspect he saw driving, wrecking, and fleeing from the stolen car.  Officer Gillane
also positively identified appellant in court as the suspect whom he took into
custody that night. 

The jury found appellant guilty of both aggravated assault
and aggravated robbery.  The jury
sentenced appellant to five years= imprisonment for the aggravated
assault and to twenty-five years= imprisonment and a $10,000 fine for
the aggravated robbery.  The jury also
affirmatively found that appellant used or exhibited a deadly weapon C a handgun C during the commission of both
offenses.  The trial court made findings
in each judgment in accordance with the jury=s deadly weapon findings. 

                                                       II.  Issues Presented

Appellant asserts the following issues for review:

(1) Did the trial court err by including deadly weapon
findings in its judgments even though the use of a deadly weapon was also an
essential element of these two offenses?

(2) Did the use of the same conduct to support an
element of the offenses and to support the deadly weapon findings violate the
double-jeopardy clauses of the United States Constitution and the Texas
Constitution?

(3) Should this court reverse the trial court=s judgments and order a new trial based on allegedly
improper and incurable jury argument by the State?

(4) Was appellant denied effective assistance of
counsel when his trial counsel did not object to numerous instances of
allegedly improper and prejudicial jury argument by the State?

(5) Did the trial court err by allowing Cassidy and
Flores to identify appellant in court because these identifications were
allegedly unconstitutionally tainted by impermissibly suggestive pretrial
identifications by Cassidy and Flores on the night of the offenses?

(6) Was appellant denied effective assistance of
counsel when his trial counsel failed to have the complainants= in-court identifications of appellant suppressed
because these identifications were allegedly unconstitutionally tainted by the
complainants= impermissibly suggestive pretrial identifications on
the night of the offenses?








(7) Should this court reverse the trial court=s judgments and order a new trial because the State
erroneously indicated during voir dire that appellant
would have to serve more time in prison if he did not pay any fine assessed
against him for these offenses?

(8) Was there an unconstitutional
delay in trying appellant for these offenses?

                                               III.  Deadly Weapon
Finding

Did the trial court err by including deadly weapon findings in its
judgments even though the use of a deadly weapon was also an essential element
of these two offenses?

 

In his first point,
appellant asserts the trial court erred when it made affirmative deadly weapon
findings in both of the judgments. 
Appellant asserts that this was error because the State previously had
relied on appellant=s use of a deadly weapon to charge him with aggravated
robbery rather than robbery and with aggravated assault rather than assault. 

                                                           Preservation
of Error

To preserve a complaint for appellate review, a party must
make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint.  See Tex.
R. App. P. 33.1(a); Saldano v. State, 70 S.W.3d 873, 886B87 (Tex. Crim. App. 2002).  Even constitutional complaints may be
waived by the failure to raise a timely objection in the trial court.  See Saldano,
70 S.W.3d at 886B89.  Because we have determined that appellant=s
first point is neither an absolute, systemic requirement nor a right that is waivable only, appellant was required to timely present
this complaint to the
trial court.  See id. at 889.








Appellant has not cited and we have not found any place in
the appellate record showing that appellant raised this issue in the trial
court.  After the jury found appellant
guilty of aggravated assault and aggravated robbery based on his use of a
deadly weapon, appellant went through the entire sentencing phase without
asserting his issue under the first  point. 
Appellant did not object to the two special issues the trial court
submitted to the jury during the punishment phase regarding the deadly weapon
finding under article 42.12, section 3g(a) of the Texas Code of Criminal
Procedure.  See Tex. Code Crim. Proc. art.
42.12, ' 3g (a)(2).  Appellant=s counsel stated in closing argument
during the punishment phase that AOne of the things you will have to
answer in punishment was whether [appellant] had a weapon.@ 
Appellant made no objection to the sentencing in the trial court below
on the grounds stated in his first point. When the trial court asked if there
was any legal reason why it should not proceed with sentencing, defense counsel
stated there was none.  Because appellant
did not assert his complaint under the first point in the trial court, appellant
has not preserved this point for review. 
See Tex. R. App. P. 33.1(a);
Saldano, 70
S.W.3d at 886B89; Steadman v. State, 31 S.W.3d 738, 741B42 (Tex. App.CHouston [1st Dist.] 2000, pet. ref=d).

Merits of Appellant=s First Point

Even if appellant had not waived his complaint, he could not
prevail on the merits.  Appellant cites a
line of cases for the proposition that a prior conviction cannot be used as an
element of an offense and also to enhance punishment for that offense.  See Hernandez v. State, 929 S.W.2d 11, 13
(Tex. Crim. App.
1996); McWilliams v.
State, 782 S.W.2d 871, 875 (Tex. Crim. App. 1990); Wisdom v. State, 708 S.W.2d 840, 845 (Tex. Crim. App. 1986);  Ramirez v. State, 527 S.W.2d 542, 543B44 (Tex.
Crim. App. 1975); Garcia v. State, 335 S.W.2d 381, 382B83 (Tex.
Crim. App. 1960).  The holdings of
these cases do not apply in this case because the State did not use any prior
conviction of appellant and because the deadly weapon findings did not increase
the punishment assessed against appellant in the two judgments below.  See Thomas v. State, 2 S.W.3d 640, 642B43 (Tex. App.CDallas 1999, no pet.); Martinez v.
State, 883 S.W.2d 771, 772B75 (Tex. App.CFort Worth 1994, pet. ref=d). 








Nonetheless, appellant asserts that we should extend the
rationale of these cases and hold that the same conduct may not be used as an
element of an offense and also as the basis for a deadly weapon finding under
article 42.12, section 3g(a) of the Texas Code of
Criminal Procedure.  See Tex. Code Crim. Proc. art.
42.12, '
3g (a).  As to certain offenses,
for example, aggravated assault, a deadly weapon finding may further restrict an inmate=s
eligibility for community supervision, parole, and mandatory supervision;
however, a deadly weapon finding does not increase the punishment assessed
against the defendant at sentencing.  See
Tex. Code Crim. Proc. art.
42.12, ' 3g (a)(2); Tex. Gov=t Code Ann. '' 508.145(d), 508.149(a)(1); Pachecano v. State,
881 S.W.2d 537, 546 (Tex. App.CFort Worth 1994, no pet.) (holding
that deadly weapon finding does not increase defendant=s sentence).  

No case directly supports the holding that appellant asks us
to adopt in his first point.  We agree
with the two other courts that have decided this issue and found that appellant=s argument under this point lacks
merit and conflicts with the unambiguous language of article 42.12, section 3g(a) of the Texas Code of Criminal Procedure, under which
the trial court may enter deadly weapon findings in all felony cases.  See Thomas, 2 S.W.3d at 642B43; Martinez, 883
S.W.2d at 772B75; see also Pachecano, 881 S.W.2d at 546 (holding that,
because a deadly weapon finding does not increase the defendant=s sentence, jeopardy does not bar
including a deadly weapon finding when the deadly weapon allegation is also an
element of the offense); cf. Tyra v. State,
897 S.W.2d 796, 798 (Tex. Crim. App. 1995) (stating
that prior Court of Criminal Appeals cases Ado not stand for the proposition that
the phrase >used or exhibited a deadly weapon
during commission of a felony offense= necessarily means >used or exhibited a deadly weapon
during commission of an offense which does not otherwise require the use or
exhibition of a deadly weapon=@); Patterson v. State, 769
S.W.2d 938, 940 (Tex. Crim. App. 1989) (agreeing with
lower court=s conclusion that Aall felonies are theoretically susceptible to an
affirmative finding of use or exhibition of a deadly weapon@); Smith v. State, 944 S.W.2d
453, 456 (Tex. App.CHouston [14th Dist.] 1997, pet. ref=d) (deleting deadly weapon finding on
different grounds but commenting that an allegation in an indictment of use or
exhibition of deadly weapon as an aggravating element in an assault case Ais immaterial for purpose of the
affirmative finding@).  Therefore, we
overrule appellant=s first point.








Did the use of
the same conduct to support an element of the offenses and to support the
deadly weapon findings violate the double-jeopardy clauses of the United States
Constitution and the Texas Constitution?

 

In his second point, appellant asserts that the trial court
violated the double-jeopardy clauses of the United States Constitution and the
Texas Constitution by sentencing him in  judgments that based both the
convictions and the deadly weapon findings on the same conduct C appellant=s use of a deadly weapon when he committed the
offenses.  Appellant asserts the trial
court imposed multiple punishments on him for the same conduct and therefore
violated the double-jeopardy
clauses of the United States Constitution and the Texas Constitutions.  Appellant acknowledges he did not object on
this basis nor did he otherwise assert this double-jeopardy claim before he was
convicted and sentenced; however, he argues that he can raise
his double-jeopardy complaint for the first time on appeal because (1) the undisputed facts show that a double-jeopardy
violation is clearly apparent on the face of the record; and (2) enforcement of
the usual rules of procedural default serves no legitimate state interest.  See Gonzalez v. State, 8 S.W.3d 640,
643 (Tex. Crim. App. 2000); Roy v. State, CS.W.3dC,
2002 WL 369978, at *3B*4 (Tex. App.CHouston
[14th Dist.] Mar. 7, 2002, no pet.).  We agree with
appellant that this legal standard applies to determine if appellant preserved
error; however, we conclude that appellant has not satisfied the first prong of
the Gonzalez test. 








Under Gonzalez, the critical inquiry is whether the
record before the appellate court clearly reflects a double-jeopardy
violation.  See Gonzalez, 8 S.W.3d
at 643B45; Roy, CS.W.3d
atC,
2002 WL 369978, at *3.  We hold that it does not.  First, when the trial court makes a deadly
weapon finding in its judgment under article 42.12, section 3g(a)
of the Texas Code of Criminal Procedure, this finding is not a separate
conviction or punishment.  See Tex. Code Crim. Proc. art.
42.12, ' 3g(a)(2); Pachecano,
881 S.W.2d at 546 (holding that, because a deadly weapon finding does not
increase the defendant=s sentence, jeopardy does not bar including a deadly weapon
finding when the deadly weapon allegation is also an element of the
offense).  Therefore, the trial court=s deadly weapon findings did not
punish appellant a second time for the aggravated robbery and aggravated
assault that he committed.  See Pachecano, 881 S.W.2d at 546.


Even if the deadly weapon findings were additional punishment
for these offenses, this would not violate double jeopardy if the Legislature
intended both punishments to apply to these offenses.  See Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L.Ed.2d 535, 542
(1983); Martinez, 883 S.W.2d at 774.  In Hunter, a state court tried a defendant in one trial for both
first-degree robbery, which included the element of the use of a dangerous or
deadly weapon, and the offense of armed criminal action, of which the defendant
was guilty because of his use of such a weapon. 
Id., 459 U.S. at 361B62,
103 S. Ct. at 675B76.
 The defendant was convicted of both state-law
offenses, and the trial court assessed a separate punishment for each
offense.  Id.,
459 U.S. at 362, 103 S. Ct. at 676. 
The United States Supreme Court held that this did not violate the
Double Jeopardy Clause because it was what the legislature intended. Id., 459 U.S. at 368B69,
103 S. Ct. at 679.  Likewise,  the Texas
Legislature has provided that, in a felony conviction, including a felony
conviction in which the use of a deadly weapon is an essential element of the
offense, the defendant=s status regarding community supervision, parole, and
mandatory supervision is affected if the defendant has used or exhibited a
deadly weapon during the commission of the offense.  See Thomas, 2 S.W.3d at 642B43; Martinez, 883 S.W.2d at
774B75; cf. Tyra,
897 S.W.2d at 798; Patterson, 769 S.W.2d at 940; Smith, 944
S.W.2d at 456.

For these reasons, after reviewing the record before us, we
find the undisputed facts do not show that a double-jeopardy violation is
clearly apparent on the face of the record. 
See Gonzalez, 8 S.W.3d at 643; Roy, CS.W.3d
at C, 2002 WL 369978, at *3B*4.
Because appellant has not satisfied the first prong of Gonzalez, we
overrule appellant=s second point.








                                                        IV.  Jury Argument

In his third point, appellant complains the State engaged in
fundamentally erroneous and incurable closing argument that allegedly violated
his constitutional right to an impartial jury trial.  Appellant first complains of the following
statement made at the beginning of the State=s closing argument during the
punishment phase:

Ladies and gentlemen, at this time I want to thank you
for your verdict.  The victims appreciate
it; the Galveston Police Department appreciates it; the County appreciates it;
and I appreciate it.

 

Appellant asserts that this was an improper community-expectation
argument.

 

 

Appellant also complains that the State engaged in improper
argument by effectively asking the jurors to put themselves in the shoes of the
victims.  In this regard, appellant
complains of the following two statements, the first from closing argument in
the guilt/ innocence phase and the second from the closing argument in the
punishment phase:

I want to talk to you about why it is important that
you are on this jury and your function as a juror.  I want you to ask yourselves have you read
the newspaper or have you ever sat at home watching TV or ever heard about a
disturbing event and talked to someone else and said, AWhy don=t they
do something about that?  Why wouldn=t someone do something about that?@ Well, today that someone is you.  You get the right to do something about
that.  You get the right to do something
about that.  Next time somebody does
something like this, there wasn=t a death in this case, but I submit next time it=s your child, mother, brother, sister, or father, what
would you want the jury that gets to decide the guy [sic] that pulled a gun on
them and took their car? What would you want to happen?  What are you going to do to stop that from
happening?  You are the final person that
gets to decide that so that someone can=t do
this type of conduct in our county and get away with it. 

. . .                                                                                                                                           








This is a
violent crime.  Think about that.  Presenting a weapon to take someone=s property and the very nature, the way they were in
there it=s just a guy and his wife coming home.  This could happen -- I want you to think when
you go render the verdict to put yourself in their shoes.   What if this was your wife?  What if this was your husband or if this was
your child? What if this was you or you were by yourself? . . . We don=t want him in our community, to have him come back to
Galveston and hold us up.

Appellant
also asserts that the State invited the jury to improperly consider parole law
in assessing appellant=s punishment by the following jury argument:

I come back
to the 40 years.  I want you to consider
40 years to live [sic], and I am justifying that by aggravated assault you
should consider no less than ten.  Half of that, twenty. 
But it=s up to you to evaluate what that crime was incurred
[sic].

 

Appellant
also complains of the following argument made by the State right after
suggesting that the jury could assess a sentence for aggravated robbery as high
as life: AYou go to life, you can go back and
look at the parole law and you can consider that.@ 
This appears to be a reference to the part of the court=s charge that instructed the jury
concerning the parole law.  

Finally,
appellant also complains that the State improperly commented on appellant=s failure to testify when the
prosecutor stated in closing argument:

Think about
what happened that night.  A common thug, a common criminal.  It=s
an act of violence.  It=s
unexplainable.  We don=t know why it happened, why he did it.  We don=t know
that.  We may all like to. We don=t have to prove why he did it.  We would like to know why but we don=t . . . we don=t know
why he did it but we know he won=t do it
again.

 








Appellant
admits that he did not object at trial to any of this argument.  However, appellant argues that the above
argument constitutes cumulative error intentionally created by the prosecution
that was so frequent, extreme, and improper as to rise
to the level of fundamental error, for which no objection at trial is
required.  This is not the law.  In Cockrell v. State, the Court of
Criminal Appeals overruled Montoya v. State and Romo
v. State and any other cases allowing an exception to normal
error-preservation rules for improper and incurable jury argument.  See Cockrell v. State, 933 S.W.2d 73, 89
(Tex. Crim. App. 1996), overruling Montoya v.
State, 744 S.W.2d 15 (Tex. Crim. App. 1987) and
Romo v. State, 631 S.W.2d 504 (Tex. Crim. App. 1982).  In
order for appellant to complain on appeal about erroneous jury argument C including erroneous argument that
was so prejudicial that an instruction to disregard could not have cured it C appellant must show that he objected
at trial to this argument and that he pursued his objection to an adverse
ruling.  See Cockrell, 933 S.W.2d
at 89; Garcia v. State, 887 S.W.2d 862, 877 (Tex. Crim.
App. 1994) (holding that no error was preserved when appellant did not object
to State=s alleged comment during closing
argument on appellant=s failure to testify), abrogated in part on other grounds
by Hammock v. State, 46 S.W.3d 889, 892B93 (Tex. Crim.
App. 2001); Campos v. State, 946 S.W.2d 414, 416B18 (Tex.
App.CHouston
[14th Dist.] 1997, no pet.).  Because appellant did not object
to any of the argument that he challenges in his  third point, appellant has not
preserved error as to this point.








Appellant
claims that preservation of error is not necessary under three cases from the
Court of Criminal Appeals.  See Blue
v. State, 41 S.W.3d 129, 131 (Tex. Crim. App.
2000) (plurality opinion); Landry v. State, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985), overruled in part by  Cockrell v. State, 933 S.W.2d 73,
89 (Tex. Crim. App. 1996); Mosley v. State,
686 S.W.2d 180, 183 (Tex. Crim. App. 1985).  Because there is no majority opinion in Blue,
it is not binding precedent.  See
Pearson v. State, 994 S.W.2d 176, 177 n.3 (Tex. Crim. App. 1999). 
Furthermore, Blue involved unsolicited comments from the trial
court, whereas this point involves allegedly improper jury argument.  Therefore, even if Blue were binding
precedent, it would not apply to the facts of this case, and the Cockrell
holding would still govern.  The
Landry case supports appellant=s ability to assert his third point;
however, the  Landry
court relied on the Romo court=s incurable-jury-argument
exception.  See Landry,
706 S.W.2d at
111.  The Court of Criminal Appeals overruled this
part of Landry in the Cockrell decision.  See Cockrell, 933
S.W.2d at 89.  The Mosley
case does not support the proposition that appellant need not preserve error
because the defendant in that case objected at trial to the challenged argument
and pursued his objections to an adverse ruling.  See Mosley, 686
S.W.2d at 183.  Based on the
foregoing, appellant did not preserve error as to his complaints under this
point, and accordingly, we overrule appellant=s third point.  See Cockrell, 933
S.W.2d at 89; Garcia, 887 S.W.2d at 877; Campos, 946 S.W.2d at
416B18.  

                              V.  Admission
of Identification Testimony

In his
fifth point,[1]
appellant asserts the trial court erred in admitting the in-court
identifications of appellant by complainants Cassidy and Flores.  Appellant asserts that these identifications
were unconstitutionally tainted by impermissibly suggestive pretrial
identifications by these individuals on the night of the offenses.  Appellant filed a motion to suppress;
however, this motion did not contain appellant=s complaint under his fifth issue,
nor did appellant otherwise assert these objections at the time the
complainants identified him in the courtroom.

To
preserve a complaint for appellate review, a party must make a timely request,
objection, or motion with sufficient specificity to apprise
the trial court of the complaint.  See
Tex. R. App. P. 33.1(a); Saldano,
70 S.W.3d at 886B87.  Even constitutional complaints may be waived by the failure
to raise a timely objection in the trial court. 
See Saldano, 70 S.W.3d at 886B89.  Appellant has not cited and we have not found
any place in the appellate record showing that appellant raised his complaint
under the fifth point in the trial court. 
Because appellant did not assert any objection in the trial court to the
identification procedure or to the complainants= in-court identifications of
appellant, he has not preserved error as to his fifth issue.  See Saldano, 70 S.W.3d at 886B89;
Perry v. State, 703
S.W.2d 668, 670B73 (Tex. Crim. App. 1986); Degarmo v. State, 922 S.W.2d 256, 268 (Tex. App.CHouston
[14th Dist.] 1996, pet. ref=d).  Accordingly, we overrule appellant=s fifth point.








                                  VI.  Ineffective
Assistance of Counsel

            In his fourth point, appellant
asserts that he was denied effective assistance of counsel when his trial
counsel did not object to numerous instances of allegedly improper and
prejudicial jury argument by the State. 
In his sixth point, appellant asserts that he was denied effective
assistance of counsel when his trial counsel failed to preserve error as to the
admission of the complainants= in-court identifications of appellant, which appellant
alleges were unconstitutionally tainted by impermissibly suggestive pretrial
identification procedures on the night of the offenses.  

Both the United States and Texas Constitutions guarantee an
accused the right to assistance of counsel. U.S.
Const. amend. VI; Tex. Const. art.
I, '
10; Tex. Code Crim.
Proc. art. 1.05.  This right
necessarily includes the right to reasonably effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.Ed.2d 674
(1984); Ex parte Gonzales, 945 S.W.2d 830, 835 (Tex. Crim.
App. 1997).  To prove
ineffective assistance of counsel, appellant must show that (1) trial counsel=s representation fell below an
objective standard of reasonableness, based on prevailing professional norms;
and (2) the result of the proceeding would have been different but for trial
counsel=s deficient performance.  Strickland, 466 U.S.
at 688B92.   Moreover, appellant bears the burden of
proving his claims by a preponderance of the evidence.  Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim.
App. 1998).  








In
assessing appellant=s claims, we apply a strong presumption that trial counsel
was competent.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  We presume counsel=s actions and decisions were
reasonably professional and were motivated by sound trial strategy.  See Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994).  Appellant has the burden to rebut this
presumption by presenting evidence illustrating why trial counsel did what she
did.  See id.  An appellant cannot meet this burden if the
record does not specifically focus on the reasons for trial counsel=s conduct.  Osorio v. State, 994 S.W.2d 249, 253 (Tex.
App.CHouston [14th Dist.] 1999, pet. ref=d). 
When, as here, there is no proper evidentiary record developed at a
hearing on a motion for new trial, it is extremely difficult to show that trial
counsel=s performance was deficient.  See Gibbs v. State, 7 S.W.3d 175, 179
(Tex. App.CHouston [1st Dist.] 1999, pet. ref=d). 
If there is no hearing or if counsel does not appear at the hearing, an
affidavit from trial counsel becomes almost vital to the success of an
ineffective-assistance claim.  Howard
v. State, 894 S.W.2d 104, 107 (Tex. App.CBeaumont 1995, pet. ref=d). 

Because
appellant did not file a motion for new trial, there was no hearing conducted
to develop counsel=s trial strategy. 
Consequently, counsel=s alleged ineffectiveness is not firmly established in the
record.  See Thompson, 9 S.W.3d at
813B14. 
The record is silent as to the reasoning and strategy behind trial
counsel=s actions.  Appellant has not rebutted the presumption
that his trial counsel made all significant decisions in the exercise of
reasonable professional judgment, and appellant has not demonstrated in the
record that trial counsel rendered ineffective assistance.  See id. at
814.  We will not speculate about counsel=s strategic decisions, and thus, we
cannot find appellant=s trial counsel ineffective based on the asserted grounds.  See Gamble v. State, 916 S.W.2d 92, 93
(Tex. App.CHouston [1st Dist.] 1996, no
pet.).  Furthermore, even if trial
counsel were ineffective, we find that, after reviewing the
ineffective-assistance claims under the totality of the circumstances, appellant
has not established prejudice.  See
Mitchell v. State, 68 S.W.3d 640, 642B44 (Tex. Crim.
App. 2002).  Accordingly, we overrule
appellant=s fourth and sixth points.

                                        VII.  Statements
During Voir Dire








In his seventh point, appellant
asserts the trial court erred in allowing the State, during voir
dire, to indicate to the jury that appellant would have to serve more time in
prison if he did not pay any fine assessed against him for the charged
offenses.  In the punishment phase, the
State did not ask the jury for a fine in closing arguments.  However, during its deliberations in the punishment
phase, the jury asked the trial court to explain the way in which appellant
would satisfy any unpaid fine by serving more time.  Before the jury finished deliberating, the
trial court, with the agreement of the State and appellant, instructed the jury
that the State and appellant agreed that neither side wanted a fine assessed
against appellant.  Nevertheless, the
jury assessed a $10,000 fine against appellant as to the aggravated robbery
conviction.

To preserve a complaint for appellate review, a party must
make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint.  See Tex.
R. App. P. 33.1(a); Saldano, 70 S.W.3d at 886B87.  Even constitutional complaints may be waived by the failure
to raise a timely objection in the trial court. 
See Saldano, 70 S.W.3d at 886B89.  Because we have
determined that appellant=s seventh point is neither an absolute, systemic requirement
nor a right that is waivable only, appellant was
required to timely present the complaint under his seventh point to the trial court.  See id. at
889.

Appellant concedes that he did not present his objection
under the seventh point to the trial court. 
Because appellant did not assert this complaint in the trial court,
appellant has not preserved this point for appellate review.  See Tex.
R. App. P. 33.1(a); Saldano, 70 S.W.3d at 886B89; Green v. State, 682 S.W.2d 271, 275 (Tex. Crim. App. 1984); Hackbarth v. State, 617 S.W.2d 944, 949 (Tex.
Crim. App. 1981). Accordingly,
we overrule appellant=s seventh point. 

                                                          VIII.  Speedy Trial

Was there an
unconstitutional delay in trying appellant for these offenses? 








In his eighth point, appellant
complains there was a ten-day delay between his arrest and his being taken
before a magistrate and that there was approximately a ten-month delay between
his arrest and his trial.  Appellant
concedes on appeal that these delays separately are not reversible error
because appellant cannot show prejudice, harm, or effort on his part to obtain
a speedy trial.  We agree that this
concession is correct.  See, e.g.,
Degarmo v. State, 922 S.W.2d 256, 264B66 (Tex.
App.CHouston [14th Dist.] 1996, pet. ref=d)
(finding no denial of right to speedy trial). 


Nonetheless,
when these nonmeritorious arguments are taken together and
considered along with appellant=s difficulty in attempting to locate out-of-state witnesses,
appellant claims that they show he received a fundamentally unfair trial, which
is structural error, requiring no preservation of error or harm analysis.  The only authority appellant cites for this
proposition is a United States Supreme Court case, stating in dicta that the
criminal defendant=s Sixth Amendment right to effective assistance of counsel
can, in certain circumstances, be structural error that is not subject to a
harm analysis.  See United
States v. Cronic, 466 U.S. 648, 658B62, 104 S. Ct. 2039, 2046B49, 80 L. Ed.2d 657 (1984).  This case does not support appellant=s argument, and we do not find this
argument convincing.  Combining two
unsuccessful grounds of appeal together does not create a meritorious ground of
appeal.

The record does not reflect the details concerning the
alleged out-of-state witnesses.  The
record does show that, at a pretrial hearing on February 10, 2001, appellant=s counsel stated that appellant was
not ready for the trial setting the following week because appellant was still
investigating the alleged out-of-state eyewitnesses.  At the request of appellant=s trial counsel, and with appellant=s own agreement, stated on the
record, the trial court postponed the trial setting for six weeks to April 2,
2001, the date the trial began. 
Appellant did not make a record as to the identities of the potential
witnesses, what they allegedly knew, or what efforts were taken to locate
them.  We hold that the alleged trial
delays and appellant=s alleged difficulty in locating out-of-state witnesses do
not combine to create structural or systemic error.  See Saldano, 70
S.W.3d at 886B89.  Accordingly, we reject appellant=s invitation to establish the new
legal principle that he espouses under his eighth point.  We overrule appellant=s eighth point.  








Having
overruled all of appellant=s points of error, we affirm both of the trial court=s judgments.

 

 

/s/        Kem Thompson
Frost

Justice

 

Judgment rendered and Opinion filed May 23, 2002.

Panel consists of Chief Justice Brister and Justices
Anderson and Frost.

Do Not Publish C Tex. R. App. P. 47.3(b).

 

 

 











[1]  We address appellant=s
fourth and sixth points together in Section VI, infra.