

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00030-CR

Jorge Rene **VELASCO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2016-CRN-000108-D4
Honorable Oscar J. Hale, Jr., Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Rebeca C. Martinez, Chief Justice
             Patricia O. Alvarez, Justice
             Beth Watkins, Justice

Delivered and Filed: July 19, 2023

AFFIRMED

Appellant Jorge Rene Velasco brings this Sixth Amendment speedy trial appeal to challenge delay in his case, beginning with his arrest and detention as a juvenile through his adult certification and indictment, ending with his guilty plea. Velasco conditioned his guilty plea on the ability to reserve this issue for appeal. We now affirm the trial court's judgment.

### BACKGROUND

When Velasco was sixteen years old, he murdered his mother.

He was arrested and detained as a juvenile for approximately one year while the State moved to certify him as an adult and while the parties litigated his mental competency. Velasco was ultimately found competent and certified as an adult.

The State filed a complaint against him, and Velasco was released on a one hundred-thousand-dollar bond. He was required to wear an ankle monitor for seventeen months until pretrial services decided that it was an unnecessary measure.

While the case remained pending indictment, Velasco's attorney sought discovery and negotiated a potential plea agreement with the assigned prosecutor. She maintained contact with the prosecutor, keenly anticipating final approval by his supervisor on the negotiated plea deal because she was moving to San Antonio and wanted to withdraw from the case. The prosecutor encouraged her to stay on and wait because he believed the case could be indicted and disposed of by plea agreement in a reasonable amount of time.

Velasco was finally indicted on February 3, 2016. His attorney continued to wait on the prosecutor to secure approval for their negotiated plea agreement. But in January 2017, the assigned prosecutor left the district attorney's office, and the case was reassigned. The next prosecutor rejected the previously negotiated probation agreement. Velasco's attorney withdrew.

The trial court assigned a new attorney, but Velasco hired substitute counsel shortly following the trial court's appointment. Velasco's substitute counsel attempted to negotiate a favorable plea agreement but was offered a twenty-year deal. This was approximately two-and-a half years after Velasco's indictment. Velasco's counsel opted to file pretrial motions, including a motion to set aside the indictment due to trial delay.

At the hearing on Velasco's motion to set aside his indictment, he agreed that he was challenging the period from his adult certification until his first criminal defense attorney withdrew. This period spanned from January 10, 2013, until July 12, 2017.

The trial court ruled against Velasco, finding that both parties had been working toward a plea agreement, which justifies trial delay. Following this ruling, both parties continued to work toward an agreeable plea disposition. This negotiation continued through (and was stalled by) the COVID-19 pandemic.

On January 4, 2022, Velasco conditionally pleaded guilty to murder in exchange for a ten-year agreed punishment recommendation and the right to appeal the trial court's speedy trial decision. Velasco now brings his speedy trial appeal. We begin with Velasco's overarching Issue One, the *Barker* balancing test for alleged speedy trial violations.[1][2]

## STANDARD OF REVIEW

In reviewing Velasco's speedy trial claim, "we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (citing *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)).

## SPEEDY TRIAL

### A. Parties' Arguments

Velasco argues that his criminal case took unreasonably long to resolve and that the delay was due to official negligence. He claims that his Sixth Amendment right to a speedy trial was violated and that his conviction and indictment should be set aside as a result. The State responds that the delay in Velasco's prosecution was sufficiently attributable to Velasco so that there is no adequate constitutional basis to justify setting aside Velasco's conviction and indictment.

---

[1] *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).
[2] Velasco designated portions within the *Barker* factors below as his Issues Two, Three, and Four, which we identify in the analysis.

**B. Law**

An accused maintains a right to a speedy trial under the Sixth Amendment of the United States Constitution and Article I, section 10 of the Texas Constitution. *Zamorano*, 84 S.W.3d at 647 (citing *Barker v. Wingo*, 407 U.S. 514, 515 (1972)). The right to a speedy trial "attaches once a person becomes an 'accused'—that is, once he is arrested or charged." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *United States v. Marion*, 404 U.S. 307, 321 (1971)) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy-trial provision of the Sixth Amendment."); *accord Zamorano*, 84 S.W.3d at 647 (citing *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992)) ("The Texas constitutional speedy trial right exists independently of the federal guarantee, but this Court has traditionally analyzed claims of a denial of the state speedy trial right under the factors established in *Barker v. Wingo*.").

A court cannot define a fixed point in time at which the State violates a defendant's Sixth Amendment right to a speedy trial. *See Barker*, 407 U.S. at 521. "On its face, the Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all." *Doggett v. U.S.*, 505 U.S. 647, 651 (1992). But an accused's right to speedy trial is tempered by both his and the public's interest in meaningful justice. *See Barker*, 407 U.S. at 522 n.15 (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)) ("A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself."). "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." *Id*. at 522 (quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)). For that reason, the United States Supreme Court implemented a balancing test of four factors to assist courts in evaluating prosecution timelines on a case-by-case basis. *See id.* at 530.

Under *Barker*, if an accused complains of unconstitutional delay, a trial court must balance the following factors to determine if the accused has been deprived of his right to a speedy trial: length of the delay, reasons for the delay, assertion of the right, and prejudice caused by the delay. *See id.*; *Zamorano*, 84 S.W.3d at 648. If the balance tips for the accused and against the State, then the accused is entitled to dismissal, severe though the remedy may seem. *See Barker*, 407 U.S. at 522. We now review these factors in turn.

**C.      Analysis**

*1.      Length of the Delay*

a.  Criminal Proceedings

From indictment to conviction, Velasco's criminal case spanned approximately six years, which is sufficient time to trigger a *Barker* analysis concerning Velasco's Sixth Amendment right to a speedy trial. *See Cantu*, 253 S.W.3d at 281 (citing *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983)). Velasco includes his time from adult certification to indictment, an additional period of three years, and the State agrees.

b.  Juvenile Proceedings

Velasco cites the time he spent charged in the juvenile court, before he was certified as an adult and indicted, as part of his unconstitutional delay complaint. The juvenile record is not before us, but parties agree that juvenile proceedings against Velasco began on January 27, 2012. The State disputes that Velasco would have been entitled to Sixth Amendment speedy trial protection in the juvenile court, since juvenile cases are considered civil in nature. *See Robinson v. State*, 707 S.W.2d 47, 48 (Tex. Crim. App. 1986).

The State's Sixth Amendment issue notwithstanding, the record makes no compelling case for including Velasco's juvenile detention in our review, as Velasco's counsel ultimately limited his argument before the trial court to the period between adult certification and the withdrawal of

Velasco's first defense attorney.[3]  *See* TEX. R. APP. P. 33.1(a); *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013).  Therefore, we do not include the length of Velasco's juvenile proceeding in our review.  *See id*.

### 2. *Reasons for the Delay*

Once a presumptively prejudicial amount of delay has been established by an accused, it is the State's burden to justify it.  *Cantu v. State*, 253 S.W.3d at 280 (citing *Barker*, 407 U.S. at 532).  The State argues that delay in Velasco's case was caused primarily by plea negotiations, which the law considers justified delay: "Delay caused by good faith plea negotiations is not the result of negligence or a 'deliberate attempt to delay the trial.'"  *State v. Munoz*, 991 S.W.2d at 824 (citing *Barker*, 407 U.S. at 531).

Velasco disagrees that good faith plea negotiation occurred and instead characterizes the delay as official negligence due to the district attorney's office's chronic indecision over the plea offer that Velasco hoped would be approved.  *See Cantu*, 253 S.W.3d at 280–81; *Zamorano*, 84 S.W.3d at 650–51.  Velasco's first defense attorney negotiated a plea offer with the issuing prosecutor before Velasco was indicted.  *See Dokter v. State*, 281 S.W.3d 152, 159 (Tex. App.— Texarkana 2009, no pet.) ("If the record contained evidence that a plea agreement had been reached and relied upon by [the appellant], such evidence might ameliorate [his] inaction to a certain extent.").  But although the assigned prosecutor encouraged Velasco's attorney to wait for his supervisor's approval, the written plea agreement never materialized.  *See Zamorano*, 84 S.W.3d at 650–51.

---

[3] At the hearing on Velasco's motion to set aside the indictment, defense counsel stated, "My argument begins from certification onward … to the point where [Velasco's first attorney] withdrew as counsel."  Regarding the juvenile case, counsel stated, "It's hard to complain about it because they went through the records and it doesn't look like they've delayed it unnecessarily."

### a. Initial Case Timeline, Plea Negotiation: February 16 through June 29, 2016

After Velasco was indicted on February 16, 2016, the trial court set the following case timeline:

| | |
|---|---|
| Deadline for Defense Motions and Briefs | APRIL 13, 2016 |
| Informal Pretrial Conference | APRIL 20, 2016, at 2:00 p.m. |
| Final Pretrial Hearing | MAY 12, 2016, at 8:30 a.m. |
| Jury Selection | JUNE 20, 2016, at 8:30 a.m. |

The parties, however, agreed on a two-month continuance for plea negotiations at the first hearing. *See Munoz*, 991 S.W.2d at 824. After the two-month continuance, the parties again agreed to reset for the prosecutor to meet with the victim's family. *See id*. We do not charge this period against the State. *See Munoz*, 991 S.W.2d at 824.

### b. Year of Reset: June 29, 2016, though September 6, 2017

After the assigned prosecutor met with the victim's family, the case remained "in reset" for a year. *See Zamorano*, 84 S.W.3d at 651. Velasco's defense attorney later complained that the prosecutor's supervisor was generally unavailable to weigh in on the plea agreement that the parties had reached, and the negotiation languished. *See id*.

In January 2017, during Velasco's year of reset, the assigned prosecutor left the district attorney's office. Velasco's case was reassigned to another prosecutor. Once the newly assigned prosecutor received Velasco's file in March 2017, she "discussed [her] thoughts related to an offer" with Velasco's attorney and co-counsel. She declined to offer or seek approval for the probation plea that Velasco had been encouraged to wait for. Velasco's attorney advised the district attorney's office that she and her co-counsel planned to withdraw. In June 2017, the trial court scheduled the third pretrial hearing to be held on September 6, 2017.

With no evidence of any ongoing negotiation during the year of reset, except perhaps for the newly assigned prosecutor finally rejecting the idea of a probation plea agreement, this period that was set aside for the former prosecutor to meet with the family about the case's outcome went a bridge too far for the State to justify the delay as ongoing "good faith plea negotiation." *See Lopez v. State*, No. 12-16-00043-CR, 2016 WL 7488864, at \*2 (Tex. App.—Tyler Dec. 30, 2016, no pet.) (mem. op., not designated for publication); *cf. State v. Munoz*, 991 S.W.2d at 826 (declining to weigh lengthy delay against the State when it is allegedly related to good-faith plea bargaining). The period of reset from June 29, 2016, until September 6, 2017, weighs slightly against the State. *See Zamorano*, 84 S.W.3d at 650.

### c. Velasco's New Counsel: September 6, 2017, through January 3, 2018

Velasco's attorney and co-counsel withdrew prior to the September 6, 2017 pretrial hearing, and new defense counsel was appointed. The State's file was made available to the newly appointed defense counsel, and the hearing was reset for November 22, 2017.

Before the November 22, 2017 hearing, Velasco hired a new attorney. The State's file was made available to the substituted counsel, and the hearing was reset for January 3, 2018. This period does not weigh against the State. *See State v. Davis*, 549 S.W.3d 688, 703 (Tex. App.—Austin 2017, no pet.) ("[W]e conclude that the appointment of new counsel was a justified delay….").

### d. Pretrial Motions, Plea Negotiation: January 3, 2018, through March 4, 2020

Velasco filed a discovery motion on December 18, 2017. On January 3, 2018, discovery was still pending, and plea negotiations were on hold. The cause was reset to February 7, 2018. On February 7, 2018, the discovery status was "still pending physical inspection of items recovered." The cause was reset to May 2, 2018.

By May 2, 2018, the outstanding discovery was resolved. The parties agreed on a ninety-day continuance to address pending motions in the case. On August 15, 2018, the case status was the same, and parties agreed to reset until September 19, 2018. On September 19, 2018, the pretrial hearing certificate reflects that the assigned prosecutor planned to leave the district attorney's office. The hearing was continued until October 24, 2018.

By October 24, 2018, the district attorney's office offered a plea agreement to Velasco that required him to agree to twenty years' imprisonment. Defense counsel stated he planned to file motions the following week. The pretrial hearing was rescheduled for February 20, 2019.

On February 27, 2019, Velasco's cause was set for a final pretrial hearing on March 4, 2019, but no motions were filed. Velasco eventually filed his motions on April 3, 2019, including a motion for more time to prepare for the evidentiary hearing on the motions.

One of the motions requested that the indictment be set aside; it argued that Velasco's right to a speedy trial had been violated. The trial court heard the motion on May 30, 2019, and denied it on June 13, 2019. The trial court reasoned that both parties had been committed to developing a plea agreement. Velasco takes exception with this reasoning and identifies it as his Issue Four. We do not charge the period between January 3, 2018, and March 4, 2020 against the State, because it is attributable to plea negotiation and Velasco's pretrial motions. *See Munoz*, 991 S.W.2d at 824; *accord Barker*, 407 U.S. at 522.

### e. COVID-19 delay: March 4, 2020, through April 1, 2021

The record shows that a pretrial conference next took place on March 4, 2020, when the parties requested to continue their plea negotiations until the following month. But on March 31, 2020, Velasco filed a motion to continue due to shelter-in-place orders that were issued because of the COVID-19 pandemic. The plea hearing was moved to August 10, 2020.

The next indication of movement in this case occurred via Zoom hearing on April 1, 2021. Velasco does not argue that this period should weigh against the State.

### f. Plea Negotiations, Trial Planning: April 1, 2021, through June 1, 2021

On April 1, 2021, the prosecutor asked for thirty days to talk to the victim's family and finalize a plea agreement. After thirty days, the prosecutor again asked for additional time to obtain approval. The hearing was reset to May 24, 2021.

On May 24, 2021, the record reflects that plea negotiations "fell through." Velasco stated that he wanted to re-urge his speedy trial issue in two weeks. The cause was rescheduled to June 7, 2021.

On June 7, 2021, the trial court emphasized the case's old age and urged parties to set a trial. The trial court acknowledged that parties had been involved in negotiations and that continuances had been granted upon requests by both Velasco and the State.

Velasco stated that he preserved his speedy trial issue in 2019 and that, since that time, parties were unable to dispose of the case due to COVID-19. Under the circumstances, he did not believe that re-urging his speedy trial issue would be constructive after all. Velasco suggested setting a tentative trial date with the expectation that parties would reach an agreement before then. But due to scheduling conflicts between the parties and the trial court, the cause was set for a plea status hearing to be heard on June 21, 2021. The period does not weigh against the State due to Velasco's concession. *See* TEX. R. APP. P. 33.1(a); *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013).

### g. Plea Status Hearings: June 21, 2021, through January 4, 2022

On June 21, 2021, defense counsel requested additional time for plea negotiation. The cause was reset to a plea hearing. The same occurred on August 3, September 7, October 25, and November 15, 2021.

On December 6, 2021, Velasco appeared at a Zoom hearing to confirm that he would accept a plea agreement from the State, but the hearing had to be reset for Velasco to appear in person.

On January 4, 2022, Velasco pleaded guilty to murder with the agreed recommendation of a ten-year sentence. The plea was contingent upon Velasco's ability to preserve his Sixth Amendment speedy trial complaint for appeal. This period does not weigh against the State. *See Munoz*, 991 S.W.2d at 824.

### 3. Assertion of the Right

"Whether and how a defendant asserts his right [to a speedy trial] is closely related to the other [*Barker*] factors … [and] is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32; *accord Gonzales v. State*, 435 S.W.3d 801, 810–11 (Tex. Crim. App. 2014); *Grayless v. State*, 567 S.W.2d 216, 221 (Tex. Crim. App. 1978).

"[A] defendant's failure to assert his speedy trial right does not amount to a waiver of that right, [but] 'failure to assert the right ... make[s] it difficult for a defendant to prove he was denied a speedy trial.'" *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) (quoting *Barker*, 407 U.S. at 532). "This is so because a defendant's lack of a timely demand for a speedy trial 'indicates strongly that he did not really want a speedy trial,' and that he was not prejudiced by lack of one. *Id*. (quoting *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992)); *accord Zamarripa v. State*, 573 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "Thus, the longer the delay, the more heavily the continued inaction on the defendant's part weighs against a finding that the right was violated." *Zamarripa*, 573 S.W.3d at 523 (citing *Dragoo*, 96 S.W.3d at 314).

When asserting his right to a speedy trial, a defendant could assert his right by asking for a speedy trial date. *See Cantu*, 253 S.W.3d at 284. He could also begin with a motion to dismiss.

*See Degarmo v. State*, 922 S.W.2d 256, 266 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). But "a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant[] and may sometimes attenuate the strength of his claim." *Id*. (citing *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App.1983).

Velasco waited until three years after indictment to assert his speedy trial right via a motion to set aside the indictment. *See Dragoo*, 96 S.W.3d at 314. This motion directly followed an unfavorable plea offer. *See Degarmo*, 922 S.W.2d at 266. At no time did Velasco ask to set a trial date until June 7, 2021, when he suggested setting a tentative trial date upon the trial court's urging and with the expectation that parties would reach an agreement before then. *See Gonzales*, 435 S.W.3d at 810–11. At all times during the case and before, Velasco sought a favorable plea agreement rather than a speedy trial disposition. *See Degarmo*, 922 S.W.2d at 266. This factor weighs strongly against Velasco. *See Barker*, 407 U.S. at 531–32.

### 4.  *Prejudice*

The right to a speedy trial is meant to mitigate or prevent oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defense will be impaired. *See id*. at 532.

Here, Velasco first cites the loss of his juvenile competency hearing record after the court reporter died in 2015. He believes this loss prejudiced him by impairing his ability to 1) appeal with a complete record, 2) present mitigating evidence at sentencing, 3) effectively negotiate for a favorable plea, and 4) establish doubt as to his mens rea at trial. He also cites the 2015 death of his competency doctor who could have testified at sentencing to potentially mitigate the punishment. He identifies these losses together as his Issue Two and claims that the trial court abused its discretion by finding that the missing record did not amount to serious harm. For his Issue Three, also nested within his *Barker* prejudice argument, Velasco complains that the trial

court erred in finding that the competency doctor's preserved record mitigated his evidentiary losses.

Next, Velasco cites his own and others' dimmed memory generally.

Finally, Velasco cites his negative life experiences that resulted from his pending charges: he did not get married; he wore an ankle monitor; he had a curfew; he could not graduate; he lost his friends; his ability to leave the country was restricted. Velasco stated that he suffered from depression and anxiety on a weekly basis and agreed that he had good days and bad days.

The State emphasizes that prejudice must be the *result* of delaying *trial*. *See McCarty v. State*, 498 S.W.2d 212, 218 (Tex. Crim. App. 1973) (citing *Harris v. State*, 489 S.W.2d 303 (Tex. Crim. App. 1973)).

The State objects to considering the loss of the competency record and the death of a competency doctor as prejudice since the proposal amounts to relitigating Velasco's competency finding that led to his certification as an adult.

The State also argues that Velasco's anxiety and depression were not legally exceptional. *See Cantu*, 253 S.W.3d at 286 (citing *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003)). On that point, we certainly do not minimize a defendant's experience with anxiety and depression due to pending charges, but we note that Velasco's evidence of emotional hardship was not legally exceptional. *See id*.

Velasco elected to wait for a plea deal instead of seeking a speedy trial date. *See Degarmo*, 922 S.W.2d at 266. He worked with the State specifically to avoid prison rather than assert his right with the court to dispose of his case through a speedy trial. *See id.*; *see also State v. Jones*, 168 S.W.3d 339, 349 (Tex. App.—Dallas 2005, pet. ref'd) (citing *Doggett v. United States*, 505 U.S. 647, 658 (1992)) ("[T]he presumption of prejudice to a defendant's ability to defend himself can be 'extenuated ... by the defendant's acquiescence' in the delay."). Velasco ultimately

negotiated an agreement that required half the punishment of the State's previous offer. This offer may well have accounted for the concerns that Velasco lists in his second and third issues. He "agreed to the terms of his plea bargain, does not contend that his plea was involuntary, and the trial court assessed punishment as recommended." *Massey v. State*, No. 01-02-01329-CR, 2004 WL 2307418, at \*8 (Tex. App.—Houston [1st Dist.] Oct. 14, 2004, no pet.) (mem. op.). Under these circumstances, establishing prejudice proves challenging since Velasco sought a plea deal rather than a speedy trial. *Cf. McCarty*, 498 S.W.2d at 218 (defendant sought dismissal rather than speedy trial).

The plea outcome caused several of Velasco's points to be hypothetical, which works against their prejudicial value. *See Grayless*, 567 S.W.2d at 222 (downplaying the value of speculative prejudice). For instance, complaining of generally dimmed memory can be an unconvincing argument when it is not fully clear what has been forgotten. *See Barker*, 407 U.S. at 532 ("Loss of memory…is not always reflected in the record because what has been forgotten can rarely be shown."); *see also Munoz*, 991 S.W.2d at 829 (holding that the appellate court erred in deciding that the "appellee made 'some showing' of an 'impairment to his defense' based on appellee's bare assertion of 'dimming memories'").

Regarding Velasco's concerns about the loss of his juvenile competency record and the passing of one of the competency doctors, it is unclear what might have been deemed relevant at trial, especially considering that the report was not meant to support an insanity defense. *See Delacruz v. State*, No. 05-12-01354-CR, 2014 WL 223174, at \*12 (Tex. App.—Dallas Jan. 21, 2014, no pet.) (not designated for publication). It is also unclear whether a trial would have resulted in conviction. A conviction might have led to a discussion about whether Velasco had been prejudiced by the loss of mitigating evidence. *See Grayless*, 567 S.W.2d at 222; *cf. Jones*, 168 S.W.3d at 349 ("Affirmative evidence of particularized prejudice is not essential to every

speedy trial claim because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify."). But this basis for prejudice is tenuous. *See Grayless*, 567 S.W.2d at 222; *Delacruz*, 2014 WL 223174, at \*12.

Velasco's first attorney testified that the deceased doctor would have been helpful to her on the points regarding mens rea and affirmative defenses at trial, but by the time of the doctor's death, Velasco's attorney was advocating for a plea agreement so that she could withdraw from the case. *See Grayless*, 567 S.W.2d at 222 (holding that appellant's failure to assert his right to a speedy trial weighed against him). At no time did Velasco's attorney advocate for Velasco's right to a speedy trial before the competency doctor passed away, which we weigh against a finding that Velasco's right to a speedy trial was violated. *See id.*

### 5. Balancing

We agree with Velasco that the disposition took a considerable amount of time to achieve. *See Cantu*, 253 S.W.3d at 281. We also conclude that the State took too long to reject the idea of a probation-available plea agreement. But we agree with the trial court that Velasco consistently worked to achieve a favorable plea agreement. "Even if [Velasco] were to have successfully demonstrated that he suffered some prejudice due to his loss of the 'chance' to [present mitigating evidence], we conclude, after weighing the remaining three *Barker* factors, that [Velasco's] failure to assert his right to a speedy trial defeats his claim." *Massey*, 2004 WL 2307418, at \*8 n.7 (citing *Barker*, 407 U.S. at 531-32). On this record, we conclude that Velasco's Sixth Amendment right to a speedy trial was not violated.

### CONCLUSION

Velasco complains of unconstitutional delay in his case, though he spent three preindictment years and six post-indictment years negotiating with the State to achieve a mutually agreeable plea bargain. For several reasons, as discussed above, we conclude that Velasco's Sixth

Amendment right to a speedy trial was not violated: 1) Velasco never requested a speedy trial; 2) he waited until his third post-indictment year to move for dismissal due to trial delay; 3) the record shows that Velasco's strategic motivation was always to achieve a favorable plea or a dismissal. On this record, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Publish